# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## MEEK v. FOX AND OTHERS.

March 23, 1916.

Absent, Kelly, J.

1. WILLS—*Construction—Vesting of Estates.*—All devises and bequests are to be construed as vesting at the testator's death, unless the intention to postpone the vesting is clearly indicated in the will.

2. WILLS—*Construction—Condition in Restraint of Marriage—Case in Judgment—"Except"—Limitations.*—Under a devise of real estate to a single daughter declaring "she shall have it forever, except she should marry, then at her death I desire that it shall revert to her legal heirs," the daughter takes a fee simple estate. The provision with reference to the daughter's marriage is neither a condition precedent nor a limitation, but a condition subsequent, and, being in general restraint of marriage, is void because contrary to public policy. The word "except" is used in the sense of "but if" which constitutes a condition subsequent.

3. WILLS—*Condition in Restraint of Marriage—Intent—Burden of Proof.*—If it be conceded that the prohibition of the law upon conditions in general restraint of marriage is aimed at the testator's *intent* to restrict marriage, and not at the restriction itself, an actual restraint or discouragement of marriage carries with it the *prima facie* presumption that such restraint was *intended*, and the burden rests upon him who alleges the contrary to prove the real intention.

Appeal from a decree of the Circuit Court of Tazewell county. Decree for complainants. Defendants appeal.

*Affirmed.*

This was a suit brought by Jno. D. Fox and Alexander St. Clair to remove a cloud upon the title to the land devised to Julia Ann Spracher.

*Henson & Bowen* and *A. S. Higginbotham,* for the appellant.

*J. W. Chapman* and *George W. St. Clair,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

The sole question presented on this appeal is the construction of the will of Peter Spracher as to the devise therein made to his daughter, Julia Anne. Testator died in the early part of 1881 and his will was probated in Tazewell county court on May 10, 1881. He devised one-third of his lands to his son, W. L. Spracher, in fee simple. To Eliza M. McFarland, his only married daughter, he devised one-third of his land during her life, remainder to her heirs, and the provision made for his daughter, Julia Anne, is as follows:

"Also to my daughter, Julia Anne, I desire that she shall have her equal share laid off, also according to quality and quantity, and she shall have it forever, except she should marry, then at her death I desire that it shall revert to her legal heirs."

After the death of the testator his daughter, Julia Anne, on June 20, 1882, intermarried with one Thomas Hall, and after this marriage and after the death of her husband, Julia Anne Hall, by deed dated September 28, 1912, conveyed the land devised to her by the above clause of her father's will to appellees, John D. Fox and Alexander St. Clair. After the marriage of Julia Anne, W. L. Spracher by deed dated December 15, 1885, conveyed his land to one Joseph Meek, and in this conveyance he included what he claimed to be his remainder in the land devised to Julia Anne by the clause of their father's will quoted above; so that in this litigation appellant claims the land in question under Joseph Meek, through the various conveyances and devises appearing in the record, while appellees claim the land under the conveyance to them from Julia Anne Hall, the contention of appellees being that a fee simple estate vested in Julia Anne Spracher under the will of her father; that the provision in said clause of his will above

quoted created a condition subsequent in general restraint of marriage; that such condition is void in law; and that, therefore, the subsequent marriage of the said Julia Anne did not divest her of this fee simple estate, but same continued in her, and was passed from her to the appellees by her conveyance above mentioned.

In discussing the intention of the testator, to be ascertained from the language employed in his will and the surrounding circumstances—that is, the situation of the parties, the ties which connected the testator with the objects of his bounty, and the motives which probably influenced him in disposing of his property—appellant takes the position that the purpose was to put his two daughters, Eliza M. and Julia Anne, upon an equal footing, and to provide for them alike; while appellees contend that his purpose was to discourage and prevent the marriage of Julia Anne by placing a penalty upon her marrying.

In looking first to the language employed in the will to determine what estate in the land devised to Julia Anne was vested in her, it is to be borne in mind that it is too well-settled to require citation of authority that all devises and bequests are to be construed as vesting at the testator's death, unless the intention to postpone the vesting is clearly indicated in the will.

As it seems to us, it would have been quite difficult, if not impossible, for the testator to have found language that would have served better to transfer a complete estate in fee simple than was used in the clause of his will making provision for his daughter, Julia Anne, which clause provides that she was to have one-third of the testator's land, "and she shall have it forever, except she marry, then at her death I desire that it shall revert to her legal heirs." The first part of the language used plainly means that the estate devised to Julia Anne was to be hers *forever*—that is, an estate in fee simple—and the latter part of it in effect is, "but if she marries, then she shall have only a life estate." It is equally as clear to us that it would be

an unwarranted perversion of said language to make it read, as contended by appellant: "I give a life estate in one-third of my lands to my daughter, Julia Anne, but if she does not marry, then she is to have a fee simple estate."

Nor can this provision in the will as to the marriage of the devisee be construed into a condition precedent or a limitation. It is not a condition precedent for the reason that the estate had already vested in the devisee, Julia Anne, at the time of her marriage, and the effect of the provision respecting her marriage, if valid at all, could only be to divest such estate, and not to prevent its vesting, which would be the result in the case of a condition precedent.

It is not a limitation, because it does not mark the extent of time for which the estate was to last, nor determine the duration of the estate. The testator does not say that Julia Anne shall have the estate *until* she marries, and thus make the time of her marrying mark the full limit of time for which the estate is given; but he gives to her an estate in fee simple, and then adds a provision, the effect of which is to cut down and destroy this larger estate and vest in her a lesser estate.

"The only general rule, perhaps, in determining whether words are words of condition or of limitation, is that where they circumscribe the continuance of the estate, and mark the period which is to determine it, they are words of limitation; when they render the estate liable to be defeated in case the event expressed should arise before the determination of the estate, they are words of condition." *Atlanta, &c. Ry. Co.* v. *Jackson,* 108 Ga. 634, 34 S. E. 184, quoting from 2 Wash. Real Prop. (5th Ed.), p. 27.

Accordingly in *Millan* v. *Kephart,* 18 Gratt. (59 Va.) 1, it is said: "While a limitation marks the boundary of an estate, and the utmost time of its continuance, the effect of a condition is to defeat the estate before it reaches the boundary or has completed the full space of time prescribed by the limitation. 1 Preston Est. 49."

In Minor on Real Prop., vol. 1, sec. 540, this learned author says: "Limitations differ from conditions in this: A limitation marks the *ultimate time of continuance* of an estate; a condition marks some event which, if it happens in the course of that time, is to *defeat the estate."*

And at p. 655, sec. 574, the same author illustrates as follows: "Thus a devise to *'A until she marries,* and then the land to pass to Z,' is a *limitation,* and good; whilst a devise *'to A for life,* on condition that if she marries the land *shall pass to Z,'* is a *condition,* and because it absolutely prohibits marriage *is void;* that is, the condition is void, and being a condition precedent to Z's estate, Z can take no interest, present or future, in the land conveyed."

The latter part of the illustration quoted, and which the author declares to be a condition subsequent, is wholly parallel with and similar to the case at bar, in that by the terms of the will under consideration there is given an estate to the devisee (Julia Anne) in fee simple, on condition that if she marries the land shall pass to her heirs, her sole heir, as it happens, being her brother, W. L. Spracher, under whose conveyance appellant claims, and who, according to the rule of construction stated by. Professor Minor, *supra,* could take no interest, present or future, in the land devised, and therefore could convey none to the appellant's predecessor in title.

Let us, however, revert to the language of the will itself and determine from it, if we can, the intention of the testator, and whether or not he,· after giving his daughter, Julia Anne, an estate in fee simple, and then adding a provision the effect of which is to cut down and destroy this larger estate and vest in her a lesser estate, intended to put a penalty upon the marriage of his said daughter—that is, intended this latter provision as a condition in restraint of her marriage generally.

As a matter of construction, it is impossible to see how the words in the will "except she marry" can be deemed identical

with "until she marry," as contended by appellant. The word "except" as it appears to us, must be construed as a *condition* and not a limitation. Indeed, to construe "except" as "until" in the sentence where it is used in the devise, would involve a self-contradiction, in that the sentence would then read, that the testator gives the land "to Julia Anne *forever until she marries,* then after her death (in the event of marriage) to her heirs. The language used can only make good sense by construing "except" as "but if" or its equivalent, which would constitute it a condition subsequent.

It may be conceded that a condition subsequent may usually be distorted into the form of a limitation, or *vice versa,* and apparently without materially affecting the meaning of the testator or grantor, but in law there is a wide difference between the two. It would doubtless be difficult to convince the ordinary man that he is not saying exactly the same thing in two different ways when he says "I give this land to you until you marry and then to B," and "I give this land to you for life, but if you marry then to B;" and if he should say either, it would be easy enough to twist it around and say it is the same as if he had said the other. But in law they are by no means the same, since all the legal differences at once arise that are recognized as existing between estates upon *condition* and estates upon *limitation,* amongst others the possibility that in an estate upon condition the condition may be void, and the estate thus become absolute and free from condition, while if the estate is upon *limitation,* the limitation marks the utmost duration of the estate under the devise or the agreement of the parties where created or conferred by deed or contract, which cannot be extended beyond that period without violating the terms of the devise in the one case, and without making a new contract for the parties in the other. Hence, while an estate limited "to A in fee, but if he attempts to alien his estate then to B in fee," would give A an absolute estate and in fee, free from condition, because the condition is

an unreasonable restraint of alienation and void, yet a limitation "to A until he attempts to alien, and then to B," would be a perfectly good limitation, and upon A's attempt his estate would cease and go over to B.

Upon reason and authority the foregoing conclusions are correct, and, therefore, in the instant case, the devise of the land in question to the testator's daughter, Julia Anne, "and she shall have it forever," transferred upon the death of the testator to the daughter a fee simple estate in the land, and the added provision to the devise, "except she should marry, then at her death I desire that it (the land) shall revert to her legal heirs," both by the simple construction of the language and the intention of the testator to be gathered from the plain language used, is a condition subsequent and must be in restraint generally of his daughter's marriage; so that the only remaining question is as to the legality of such a condition.

It has, by numerous decisions of this court, been held that any contract or provision in general or total restraint of marriage is against the policy of the laws of this State, and this view, it appears, has been uniformly taken wherever the question has arisen.

In *Maddox* v. *Maddox,* 11 Gratt. (52 Va.) 804, the will construed bequeathed to the testator's niece certain personal property during her life, and forever if she should remain a member of the Society of Friends, in order for her to do which it was necessary for her to marry one of the members of the society; but there being only a few male members of the society in that community, the court held that the provision was an unreasonable restraint on marriage, and therefore void, the court saying in its opinion: "Hence not only should all positive prohibitions of marriage be rendered nugatory, but all unjust and improper restrictions upon it should be removed, and all undue influence in determining the choice of the parties should be carefully suppressed. . . . But where a condition is in restraint of marriage generally, it is deemed to be contrary to

public policy, at war with sound morality, and directly violative of the true economy of social and domestic life. Hence such a condition will be held utterly void."

The court again took the same view of the policy of the law in the case of *Phillips* v. *Ferguson,* 85 Va. 509, 8 S. E. 241, 1 L. R. A. 837, 17 Am. St. Rep. 78, where it is said: "The law upon this whole subject is well summarized in a valuable treatise as follows (quoting from 2 Pom. Eq., sec. 933): When a condition (in restraint of marriage) is subsequent and annexed to a gift of land (or of any interest arising out of land), if general, it is void, and although broken, the estate of the donee continues . . ." To a report of this case in 1 L. R. A. 838, the following note is appended: "Notwithstanding the confusion and uncertainty which surrounds the subject of contracts in restraint of marriage, the authorities recognize certain propositions which lie at the foundation, namely: that all conditions annexed to gifts which prohibit marriage generally and absolutely are void, unless it be a condition precedent annexed to a devise of land; and if not in absolute restraint, but in such form that it will probably operate as a general prohibition, it is void under like limitation, and this upon the ground of public policy."

In *Smythe* v. *Smythe,* 90 Va. 638, 19 S. E. 175, the clause of the will construed is as follows: "I give and bequeath unto my two sisters, Kate A. and Mattie R. Smythe, all my estate of every kind, both real and personal, of which I may die seized, to be by them used and enjoyed during their natural lives. But the benefits of the bequest are to continue to my said two sisters upon the condition that they shall remain sole." Held null and void as placing a restraint upon marriage.

The decisions in the cases cited are in harmony with the decisions in other jurisdictions, as well as with the text writers on the subject, which are clear and emphatic on the point that a condition subsequent in general restraint of marriage is void, and cannot have the effect to divest an estate which is already

vested. Among the authorities adverted to are: *Sullivan* v: *Garesche,* 229 Mo. 496, 129 S. W. 949, 49 L. R. A. (N. S.) 605; *Arthur* v. *Cole,* 56 Md. 100, 40 Am. Rep. 409; *Watts* v. *Griffin,* 137 N. C. 572, 50 S. E. 218; *Randall* v. *Marble,* 69 Me. 310, 31 Am. Rep. 281; *Kennedy* v. *Alexander,* 21 Ap. D. C. 424; 2 Min. Inst. (2d Ed.), 245 *et seq.;* Tiedeman on Real Prop., secs. 275, 281; 1 Shep. Touch. Hilliard's Am., Ed. 132; 2 Redfield on Wills, p. 302.

Counsel for appellant endeavor to draw a distinction between the effect of a condition subsequent in restraint of marriage when attached to a bequest and when attached to a devise, but the case of *Fifield* v. *Van Wyck,* 94 Va. 557, 27 S. E. 446, 64 Am. St. Rep. 745, cited as authority for the proposition, clearly does not go to the extent that counsel would have it go. On the contrary, it specifically refers to the case of *Phillips* v. *Ferguson, supra,* which is authority for the proposition that conditions subsequent in restraint of marriage have the same effect in realty as in cases of personalty, and are both null and void as against public policy.

No authority has been adduced by appellant's counsel to controvert the proposition that if an intention on the part of the testator to impose a general restraint upon the marriage of a devisee is established, then such restriction is void, and the devisee will take an absolute estate.

The two cases mainly relied on by appellant are *Mann* v. *Jackson,* 84 Me. 400, 24 Atl. 886, 16 L. R. A. 707, 30 Am. St. Rep. 358, and *Jones* v. *Jones,* L. R. 1 Q. B. D. 279. A careful examination of those cases discloses that they are not authority for appellant's contention in this case. The process of reasoning applied in those cases is wholly different from that applied in the cases decided by this and other courts and the text writers cited above. Not only so, but in *Mann* v. *Jackson, supra,* the court makes this statement: "It is undoubtedly an established rule of law that, even with respect to a devise of real estate, a subsequent condition which is intended to operate in

general restraint of marriage, or the natural effect of which is to create undue restraint upon marriage and promote celibacy, must be held illegal and void, as contrary to the principles of said public policy."

In *Jones* v. *Jones, supra,* Lust, J., says: "As I read the words, the testator only meant to provide for her while she was unmarried" (a limitation), though the language of the will is, "Provided, said Mary remains in her present state of single woman;" otherwise, if she binds herself in wedlock, she is liable to lose her share," etc.

It might have been possible and proper to distort the form of expression used by the testator (condition) into a different form (limitation) in accordance with his assumed intent, but it does not seem to us proper or even possible to do that in the case under consideration, for the obvious reason that it would involve the contradiction already mentioned of giving to the testator's daughter, Julia Anne, an estate *forever until she marries,* which is repugnant and plainly self-contradictory, and if this be true then the testator must be presumed to have intended a *condition subsequent* and nothing else.

Appellant relies also upon the case of *Selden* v. *Keen,* 27 Gratt. (68 Va.) 576, and in that case the court did arrive at the conclusion that the provision in the will in regard to the marriage of the legatee was not void, as in restraint of marriage, but that same was a *limitation,* limiting the estate to the legatee until her marriage, and in the event of her marriage the estate given to her until that time ceased; but we deem it only necessary to say that a very different state of facts existed in that case from those of the case at bar; that the case was decided upon its own peculiar facts, and there is nothing in the court's opinion that disturbs the doctrine laid down in the case of *Maddox* v. *Maddox, supra,* and followed in the other cases above cited.

The great weight of authority is to the effect that conditions annexed to a bequest or a devise, the tendency of which is unduly to restrict or restrain marriage, are contrary to public

policy and void, and it must be conceded that the intention of the testator in making the condition is immaterial, however praiseworthy that intent may have been. He must carry out his intention in some other way than by impinging upon the policy of freedom of marriage. But even if it could be granted that the prohibition of the law is aimed at the testator's *intent* to restrict marriage, and not at the restriction itself, it would seem clear that an actual restraint or discouragement of marriage would carry with it the *prima facie* presumption that such restraint was *intended,* and the burden would be upon him alleging the contrary to prove the real intention. Upon this theory there is nothing in the will or the surrounding circumstances of the testator, as disclosed by the evidence in this case, that would satisfactorily establish an intent contrary to that to be gathered from the language of the will itself. Each side has its theory as to what the real purpose or intent of the testator was, and one seems just as plausible and as well supported as the other.

Upon the whole case, therefore, we are of opinion that the decree of the circuit court complained of is right, and it is affirmed.

*Affirmed.*