## CIRCUIT COURT OF SHENANDOAH COUNTY

Garland Lee Estep et al.

v.

Mabel H. Estep,
in her own right
and as executrix, etc.

November 9, 1951

BY JUDGE ELLIOTT MARSHALL

In this case the demurrer challenges the sufficiency of the averments of the bill of complaint on the ground that the will sought to be construed is so plain and unambiguous that no judicial construction thereof is necessary and on the further ground that the construction urged by the complainants would be contrary to the law. While I have doubts as to whether the court could sustain the demurrer on the grounds assigned because a construction of the will would be necessary in order to decide the issues raised, counsel tacitly consented to a judicial construction of the will at this stage of the case.

The testator in this case has presented us with a peculiar and difficult problem. In the fourth clause of the will the residue of his estate, both real and personal, after the payment of all debts, is devised in general terms to his sister. In the fifth clause he provides that "*in case*" his sister should die or marry "*what I have willed to her*" shall be divided among his nieces and nephews.

The complainants contend that the estate created in the sister, the first taker, was either a life estate subject to be divested on marriage of

the first taker or a fee subject to be defeated upon the condition subsequent of marriage.

The defendants first contend that the sister is vested absolutely and in fee simple because the fourth clause, the devise and bequest being in general terms and without limitation, created a fee simple and any attempt thereafter in the fifth clause to limit the fee would be void because of repugnancy. They urge that the doctrine of *May* v. *Joynes*, 61 Va. (20 Gratt.) 692 (1871), and the long line of authorities following it and repeating its fundamental principles, irrespective of the changes in the Virginia Statute (Virginia Code, § 55–7) control us in the construction of the instant will. Their argument is that once we perceive the intention of the testator to create a fee simple, then this intention is controlling and we must view all other language in the will as subsidiary desires of the testator and an illegal attempt to limit the full estate previously created. This is no doubt true once it be conceded that the plain intent of the testator was to create a fee simple in the first taker. If such an intent is not made clear under the provisions of the will the rule of *May* v. *Joynes* would not apply.

One of the most certain methods of ascertaining the testator's intention as to the quantum of the estate created is to examine his provisions as to the rights which he intends the devisees to exercise over the property; this is true even though the technical language used in the creation of the estate might indicate to the contrary. If the devisee is granted rights in the property which are inconsistent with life tenancy but consistent with fee simple ownership, the courts perceive that it was the intention of the testator to create a fee simple rather than a life estate; and, of course, the converse is true. Thus, in *May* v. *Joynes*, *supra*, while the testator created in the first taker an express life estate, his provision that she should have absolute power of disposition, being one of the most important incidents of ownership in fee simple and being inconsistent with life tenure, the dominant intention of the testator was found to be the creation of a fee simple and the will was so construed. It is, of course, not necessary that the power of disposition be express. It can be created by implication from the language of the will. *Skinner* v. *Skinner*, 158 Va. 326 (1932); *Whitehead* v. *Whitehead*, 174 Va. 379 (1940).

In the instant case the will contains no express provision for power of disposition in the first taker and there are no other expressions of the testator as to any rights to be exercised by her over the property. The

language of the will as a whole must, therefore, be scrutinized to ascertain whether the power of disposition or other rights incident to fee simple tenure be created by implication.

The only case cited which may be of value in deciding as to the creation of the power by implication is *Whitehead* v. *Whitehead, supra.* Of course, in that case the testator in creating the estate in the first taker used the technical phrase *"in fee simple."* But because of the later provision as to the attempted disposition of the property upon the death or remarriage of the first taker, the court examined the will to ascertain the true intention of the testator as to the quantum of the estate, thus tacitly admitting that the use of the technical phrase creating a fee simple estate was not controlling if the whole language of the will indicated to the contrary. (This proposition is unanimously sustained by the authorities). The court, upon examining the will, found an implied power of disposition in the first taker because of the use of the phrase *"balance of my estate"* in attempting to create a vested remainder upon the death of the first taker or a remainder contingent upon remarriage of the first taker, (or, possibly, a condition to defeat a fee in the first taker). It was the opinion of the court that the use of the words *"balance of my estate"* indicated that the testator contemplated that his estate might not be intact at the death or remarriage of the first taker; therefore, he intended that she should have power of disposition. Although the court did not say so the language was construed to intend the same as the will concerned in *Skinner* v. *Skinner, supra,* which provided for a reversion upon the death of the first taker of *"such remaining part of the bequest as she shall die possessed of."* Of course, the implication of the language of the latter case is much clearer than the former. In the *Whitehead* case, Holt, J., in his dissent disagreed with the construction that the majority placed on the phrase *"balance of my estate."* He thought that this phrase was simply a reiteration of the same language used to describe the property devised to the first taker and could not be construed to grant the power of disposition by implication.

Reading the instant will it is difficult to perceive how the language of the will could be construed to create in the first taker a power of disposition or any rights incident to ownership in fee simple. The defendants attempt to draw an analogy between this and the *Whitehead* case because of the use of the phrase *"remainder of my possessions"* in the fourth clause. The answer to this is that the significance of the

phrase *"balance of my estate"* in the *Whitehead* case was that it was used in describing the property to go to the second taker. This is not the situation here. I can find nothing in the instant will to imply the actual intention of the testator that the first taker should have power of disposition. There is nothing to indicate that the testator anticipated that the estate devised to the first taker would not be intact at her death.

The defendants next contend that the phrase "what I have willed to her" (the first taker) indicates the intention of the testator that she should exercise full rights of ownership over the property. I cannot agree with this contention. I think that this phrase could be just as logically construed to indicate that the testator contemplated that the estate would remain intact in the hands of the first taker until her death or marriage, and, therefore, that she should have no power of disposition. In my opinion there is no language in the instant will which could expressly or impliedly create in the first taker a power of disposition or any of the other incidents of fee simple. Therefore, *May* v. *Joynes* does not apply.

It is next contended by the defendants that, since under the provisions of the Virginia statutory rule of construction (Code § 55–11) Clause (4) of the will creates a fee simple in the first taker, the estate is not cut down by virtue of Clause (5) because its language is not "as clear and decisive as the language by which the estate was previously created." cf. *Moore* v. *Holbrook*, 175 Va. 471 (1940). This general rule of construction is stated in 33 Am. Jur. p. 478:

> The underlying theory is that when an estate in fee is devised *in clear and decisive terms*, it cannot be cut down or taken away by raising a mere doubt in some subsequent clause or by some other inference therefrom; to give such effect, the words of the subsequent clause must be as clear and decisive as are the words of the clause giving the estate in fee. (cf. *Barksdale* v. *White*, 28 Gratt. 224) It must be reasonably certain that reduction of the devise was the testator's intention. Thus while an *express* gift in fee will not be reduced to a life estate by mere implication from a subsequent gift over, this may be done by subsequent language clearly indicating such intent and equivalent to a positive provision. (Italics supplied)

In my opinion this general rule of construction does not apply to this case because Clause (4) of the will contains no language of the testator indicative of the quantum of the estate intended to be created. The only reason that a fee would be created by the devise in general terms is the statutory rule of construction which operates when the will is silent as to the nature of the estate and the intention of the testator cannot be perceived from the contents of the will. The statute itself provides that the rule does not apply if a contrary intent "shall appear by the will." The general rule of construction applies only where the fee previously created is devised in "clear and decisive terms," as in *Barksdale* v. *White, supra*. In that case property was devised to testator's five daughters *and their heirs forever*. In a later residuary clause of the will the testator left his *property not previously disposed of* in the will to the first takers "which I lend to them for and during the term of their natural lives, and after their death to be equally divided among their children; but should either or any of my daughters die without an heir of her own body, it is my will and desire that *all the property loaned or given them* be equally divided among my grandchildren." (Italics supplied.) The question was whether the italicized language of the residuary clause should be construed, not only to apply to the residue of the estate, but also to cut down the fee formerly created. The court found the language of the residuary clause too ambiguous to be construed to cut down the fee simple formerly granted in express terms. I think it clear that the general rule of construction is only to be applied where there is conflict between the express provisions or necessary implications of the testator's language contained in two or more clauses of the will, and not where the first devising clause contains no language descriptive of the quantum of the estate.

Of course, it must be conceded that if the language of Clause (5) is so ambiguous as to admit of no reasonable construction as to the true intention of the testator it must yield to the provisions of Clause (4).

Under these considerations we must, I think, read the two clauses of the will together to ascertain the true intention of the testator.

At the outset it is perfectly obvious that the testator intended to limit the estate in some manner. Certainly it is safe to say that he intended his nieces and nephews to have some interest in the property upon the death or marriage of the first taker.

In my opinion the only language of the fifth clause which creates any uncertainty is "in case my sister, Mabel H. Estep, should die or

marry." We cannot, of course, assume that the testator was ignorant of the certainty of death, and his expression phrased as though he may have intended the rights of the remainderman to depend upon a contingency rather than an ultimate certainty gives us some pause. In this respect the defendant urges that the will should be construed to intend that the contingency should arise only in the event that the testator predeceased the first taker, and thus any estate would be defeated if the testator survived his sister. In other words the testator intended to create a fee on condition precedent. There are three reasons why I cannot subscribe to this reasoning:

(1) The will must be construed as of the date of the death of the testator;

(2) Such a construction would require either the insertion of additional words into the will or the court's interpretation of his language in a manner not in conformity with the usual definition of his terms; and,

(3) The law does not favor the imposition of conditions unless the intention is obvious.

The only other explanation of the questioned language is that the testator did not intend to include death, but only marriage, in his definition of the contingency upon which the estate would determine. If he had used the phrase "upon death or marriage" there could have been no doubt as to his intention, and we should have been compelled to hold his intent to be that the first taker was invested with a life estate terminable upon marriage. We must not hold the testator too strictly accountable for ineptness of expression. I think that we do not stretch the meaning of his language too much when it is concluded that it means that the estate is to terminate upon death or upon the contingency of marriage. Of course, any estate to terminate upon the death of the taker must be a life estate by implication.

The only other question is whether the provision as to the termination of the life estate in the event of marriage is valid.

The remaining problem is to decide whether the provision as to the status of the property devised to the first taker in the event of marriage is invalid as constituting an illegal restraint on marriage.

The test, of course, is whether the language of the testator indicates an intention to define the duration of the estate devised, or to defeat the estate previously created upon the arising of a condition subsequent. In

the former the provision is valid; in the latter it is contrary to public policy and void.

The cases in Virginia seem to sustain the general proposition that if from the whole of the will it appears the testator intended to provide for the beneficiary until her marriage or so long as she remains unmarried the court must construe the provision as a special limitation upon the estate. But if it be concluded that the testator intended to devise to the beneficiary an estate certain, but, in order to induce her to remain single, intended to deprive her of his property, if she should marry, the provision is to be construed as an attempt to defeat the estate created upon the happening of a condition subsequent, and void as an illegal restraint upon marriage. In other words, if the testator intends the provision as a restraint the provision is void; if not, it is a valid limitation. *Selden* v. *Keen*, 68 Va. (27 Gratt.) 576 (1876); *Smythe* v. *Smythe*, 90 Va. 638 (1894); *Meek* v. *Fox*, 118 Va. 774 (1916). See also 122 A.L.R. 59–70.

In the instant case the provision is contained in the very terms used to establish the quantum of the estate. The testator is defining the estate created when he directs that "in case my sister . . . should die or marry," the property should go to his nieces and nephews. He is saying that she is to have the property until such time rather than that she should be deprived of it upon death or by marriage. It is true that the words "in case of" ordinarily would be construed as conditional, but used in connection with either death or marriage, in my opinion, they seem to indicate the intention to provide for the beneficiary until the happening of either event. In any event the use of a particular phrase is not conclusive. As stated in 122 A.L.R. 60:

> In determining whether a provision relating to marriage is a condition subsequent or a limitation, the whole instrument must be examined, *without regard to particular expressions* or the order in which they occur, *and this even though the language used is appropriate to create a condition.* (Italics supplied.)

We find this phrase "in case" used in the will involved in *Selden* v. *Keen, supra,* where it was held that the provision was a limitation rather than a condition. The property was left in trust for Courtney W. Brook. A later clause of the will provided:

> In case the said Courtney W. Brook should die under the age
> of twenty-one years, or marries, I direct . . . that the trust shall
> be for the benefit of two other named beneficiaries. (p. 577.)

On page 584 the court set forth the reasons why the intentions of the testator were to create a limitation rather than a condition. In my opinion the same reasoning can be applied to the instant case.

Under the above considerations it is my opinion that the will of Julius William Estep, deceased, should be construed to vest in Mabel H. Estep an estate for life or until marriage, with remainder over in fee to the nieces and nephews named upon the happening of either event.